## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

KYRON MURDOCK, #R31136,      )
      )
      **Plaintiff,**      )
      )
vs.       )     **Case No. 17-cv-615-MJR**
      )
IDOC,       )
WEXFORD HEALTH SOURCES INC.,      )
JOHN BALDWIN,       )
LOUIS SHICKER,       )
JACQUELINE LASHBROOK,      )
BRUCE RAUNER,       )
DR. TROST,       )
JOHN DOE, and       )
JANE DOE,       )
      )
      **Defendants.**      )

# MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

Plaintiff Kyron Murdock, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings this civil rights action pursuant to 42 U.S.C. § 1983 against nine defendants who allegedly violated his constitutional rights at Menard between 2015 and 2017. (Doc. 1). He seeks monetary damages and injunctive relief.[1] (Doc. 1, p. 26).

This case is now before the Court for preliminary review of the Complaint (Doc. 1) pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–

---

[1] Plaintiff seeks specific medical care for his knee and hip injuries. (Doc. 1, p. 26).

(1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. At this juncture, the factual allegations in the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## **The Complaint**

Plaintiff asserts six sets of claims against Defendants. (Doc. 1). All events giving rise to these claims occurred at Menard between 2015 and 2017. A summary of the factual allegations offered in support of the claims is followed by a brief analysis of each claim below. Any claim that is not recognized by the Court in this screening order should be considered dismissed without prejudice from this action.

### **1. Conditions of Confinement (Count 1)**

Plaintiff describes Menard as old, dilapidated, overcrowded, and understaffed. (Doc. 1, pp. 5-7). The prison was built in 1878 and has not been updated. (Doc. 1, pp. 5-6). In 1998, buildings at Menard were evacuated because debris was falling from crumbling ceilings. (Doc. 1, p. 6). The State's strict budgetary constraints are only making things worse. (Doc. 1, pp. 5-6). Since at least 2015, IDOC has had to make budgetary cuts which are reflected in deteriorating

prison conditions. (Doc. 1, pp. 5-7). According to the Complaint, the facility and state budget simply cannot accommodate Menard's inmate population. (Doc. 1, pp. 5-6).

Cells that were originally built to house one inmate are now used to house two inmates. *Id*. To accommodate two inmates, bunk beds have been installed in each cell. (Doc. 1, p. 7). The bunk beds have no ladder, so Plaintiff must climb on the toilet, step on the sink, and then jump onto the top bunk. (Doc. 1, p. 8). This places him at risk of injury. *Id*.

The cells are so small (approximately 4' by 10'), only one inmate can be on the floor at a time and there is no room for exercise. (Doc. 1, pp. 9, 21, 23; Doc. 1-2, p. 2). The inability to exercise is particularly problematic for Plaintiff because an outside medical specialist has directed Plaintiff to perform daily stretching exercises as treatment for hip and knee injuries. (Doc. 1, pp. 9, 21). The cells are too small and cramped for Plaintiff to comply with his treatment plan. (Doc. 1, pp. 21, 23-24). Although Menard has a policy authorizing inmates to exercise outside of their cells for one hour each day, prison officials often disregard the policy. (Doc. 1, p. 12). Thus, out-of-cell exercise is also limited. Because Plaintiff cannot move freely around his cell and is not given adequate opportunities to exercise, he is suffering from headaches, constipation, knee pain, back pain, and sore muscles. (Doc. 1, p. 9).

In addition to the above, Plaintiff complains of the following cell conditions:

- Plaintiff has been housed in cells where pieces of the ceiling are falling to the floor. (Doc. 1, p. 6).

- Plaintiff has gone for days at a time without water to clean himself and without drinking water, sometimes in 100 degree heat. (Doc. 1, p. 6).

- The facility has inadequate ventilation, resulting in extremely hot and cold temperatures. (Doc. 1, p. 10).

- The cells are infested with ants, mice, and roaches. (Doc. 1, p. 8).

- The plumbing is inadequate. (Doc. 1, p. 6). Sometimes Plaintiff cannot flush his toilet and is forced to live in a cell with human waste accumulating in the toilet. *Id.*

- Cleaning supplies and basic hygiene items are not provided on a regular basis. (Doc. 1, pp. 5-7). As a result, Plaintiff cannot keep his cell clean. (Doc. 1, p. 7).

- The cells and showers have high levels of toxic black mold and Plaintiff is breathing in mold spores on a daily basis. (Doc. 1, p. 8).

Plaintiff names three high-ranking officials, including Governor Bruce Rauner, Illinois Department of Corrections ("IDOC") Director Baldwin, and Warden Lashbrook, in connection with this claim. (Doc. 1, pp.5-7, 23). Plaintiff alleges that they were generally aware of the conditions at Menard because of the numerous complaints and grievances filed by inmates about the conditions at Menard and because of the John Howard Association Monitor Reports 2013-15 regarding the same. (Doc. 1, pp. 5-7, 23; Doc. 1-2, pp. 17-35). Plaintiff also alleges that he filed a grievance on January 6, 2017, but received no response. (Doc. 1, pp. 2-3).[2] Plaintiff contends he sent follow-up letters to Lashbrook and Baldwin. *Id.* Plaintiff has also attached numerous letters addressed to Lashbrook, Baldwin, and Rauner that include complaints about his unanswered grievance or grievances, inadequate medical care, and/or conditions at Menard. (Doc. 1-2, pp. 13-20, 25-27). Plaintiff contends that these individuals have "turn[ed] a blind eye" to the complained of conditions. (Doc. 1, pp. 5-7, 23).

## 2. Medical Care (Counts 2, 3, and 4)

Plaintiff's medical claims relate to his severe knee and hip pain/injuries. (Doc. 1, pp. 15-17, 18-20, 24). The Complaint does not specify when Plaintiff began experiencing knee and hip

---

[2] The Complaint references a grievance filed on January 6, 2017. (Doc. 1, pp. 2-4). Plaintiff has attached several grievances dated January 6, 2017 to the Complaint (Doc. 1-2, pp. 2-9). Two of the grievances appear to include complaints about cramped cell conditions and related issues. (Doc. 1-2, pp. 2-3, 6-7). The other grievances relate to Plaintiff's medical claims in the instant case (knee and hip injuries/pain) and/or other matters not at issue in the instant case.

pain or how the injuries occurred. However, an exhibit attached to the Complaint indicates that as of December 11, 2016, Plaintiff had "been dealing with a right hip/left knee injury for several months." (Doc. 1-1, p. 4). The Complaint and attached exhibits reveal the following with regard to Plaintiff's medical claims.

- Plaintiff began experiencing severe knee and hip pain in mid to late 2016. (Doc. 1-1, p. 4).

- Plaintiff requested treatment for his knee and hip pain by submitting numerous sick call requests. (Doc. 1, p. 15; Doc. 1-1, pp. 4-8).[3]

- Plaintiff's knee and hip were x-rayed in October 2016. (Doc. 1-1, p. 15). Plaintiff's knee x-ray was "unremarkable." *Id*. Plaintiff's hip x-ray revealed no fractures or dislocation. *Id*. However, a "lack of normal offset at the femoral head and neck junction" was observed. *Id*. The examining physician indicated that a bilateral femoral acetabular impingement was suspected and required further clinical evaluation. *Id*.

- Dr. Trost presented Plaintiff's case to collegial for an orthopedic consultation. (Doc. 1-1, p. 16). Dr. Ritz and Wexford denied the request on October 19, 2016, stating that Dr. Ritz was requesting additional information prior to approving an orthopedic referral. (Doc. 1-1, p. 16).

- Between December 11, 2016 and December 22, 2016, Plaintiff submitted five sick call requests regarding ongoing severe knee and hip pain. (Doc. 1-1, pp. 4-8).

- On December 23, 2016, Plaintiff was examined by an outside specialist. (Doc. 1-1, pp. 7, 9; Doc. 1, p. 18). The outside specialist recommended Plaintiff be treated by a physical therapist and instructed Plaintiff to perform specific stretches/exercises on a daily basis. (Doc. 1-1, pp. 7, 9, 14; Doc. 1, pp. 21, 23).

- At the time, Menard's HCU did not have a physical therapist on staff. (Doc. 1, p. 18). Accordingly, Plaintiff was not immediately seen by a physical therapist. (Doc. 1, pp. 19-20).

- Plaintiff began submitting letters and grievances on December 26, 2016 (just three days after the outside specialist recommended physical therapy) inquiring about when he would begin receiving physical therapy and/or complaining that he had not yet received

---

[3] According to the Complaint, Plaintiff's sick call requests were all ignored. (Doc. 1, p. 15). However, as set forth above, the exhibits and allegations in the Complaint suggest that Plaintiff's complaints were being reviewed by medical staff.

physical therapy. Plaintiff continued to submit letters and grievances through April 2017. (*See* Doc. 1-1, pp. 9, 11, 13; Doc. 1-2, pp. 8-9, 13-17, 19-21, 24-27).

- Eventually, "after more than a month," Plaintiff began receiving treatment from a physical therapist. *Id.* Plaintiff completed his course of physical therapy on March 17, 2017. (Doc. 1-2, pp. 10-11).

- Plaintiff was unable to perform the daily stretching exercises prescribed by the physical therapist because his cell was too small for exercise. (Doc. 1, pp. 23-24; Doc. 1-2, p. 7). Plaintiff told Trost and his physical therapist (John Doe) that his cell was too small for exercise. (Doc. 1, p. 21; Doc. 1-1, p. 9).

- Plaintiff contends that the physical therapist did not provide proper treatment. (Doc. 1, p. 20). The physical therapist's exercises only focused on Plaintiff's outer hip. *Id.* Plaintiff's injuries were to his knee and the *inside* of his hip. Plaintiff relayed this to the physical therapist and told him that outer hip exercises were not helpful. *Id.* The adisregarded Plaintiff's complaints and continued to only provide treatment for Plaintiff's outer hip. *Id.*

- Plaintiff submitted a grievance on March 17, 2017 regarding the allegedly inadequate physical therapy and requesting additional treatment. (Doc. 1-2, pp. 10-11). The grievance was deemed an emergency by the warden. (Doc. 1-2, p. 12). The grievance counselor contacted the HCU Administrator, who advised that collegial was referring Plaintiff to an outside specialist and that an appointment had been scheduled. *Id.* Further, Plaintiff was scheduled to see the nurse practitioner on April 18, 2017. *Id.* Accordingly, on April 18, 2017, Plaintiff's grievance was denied as moot. *Id.*

Plaintiff contends that the inability to perform daily therapeutic exercises and the delay in receiving physical therapy caused him to suffer needlessly and exacerbated his injuries. (Doc. 1, pp. 19-20, 24). Plaintiff also alleges that when he did receive physical therapy, he received the wrong type of physical therapy, resulting in additional pain and further injury. *Id.*

According to the Complaint, Plaintiff's delayed physical therapy is connected to Menard's overcrowding and budgetary constraints. Specifically, Plaintiff alleges Wexford, a private medical corporation that provides health care staff and services to prisons in Illinois (Doc. 1, p. 13), routinely understaffs Menard's health care unit ("HCU"), as a means of cutting costs. *Id.* Plaintiff maintains that, consistent with Wexford's cost-saving policy of understaffing

the HCU, Trost and Wexford decided not to hire a physical therapist. (Doc. 1, pp. 18-20). As a result, Plaintiff's care was delayed.

Plaintiff alleges Rauner, Baldwin, Lashbrook, and Shicker knew Wexford was deliberately understaffing the HCU and that, because of this understaffing, the HCU was providing deficient healthcare. (Doc. 1, pp. 9-10, 22-23). Plaintiff claims these individuals were knowledgeable about the HCU deficiencies because of a class action lawsuit filed in 2012 (Doc. 1, p. 9) and because of inmate grievances and published reports regarding the same issues (Doc. 1, pp. 22-23). Despite being aware of these problems and the risks to inmate health, Rauner Baldwin, Lashbrook, and Shicker turned a blind eye. (Doc. 1, pp. 9-10, 22-23). Plaintiff also claims he wrote letters regarding "the outside doctor's [physical therapy] recommendation" to Trost, Lashbrook, Baldwin, Shicker and Jane Doe (HCU Administrator). (Doc. 1, p. 19).[4]

Plaintiff claims he complained to Trost and John Doe (physical therapist) about his cell being too small to perform the daily therapeutic exercises prescribed by the outside specialist. Apparently, Trost and John Doe did nothing to remedy this problem. (Doc. 1, p. 21; Doc. 1-1, p. 9).

### 3.  Claims Pertaining to Prisoner Mail (Counts 5 and 6)

Plaintiff contends the mailroom is "deliberately understaffed," pursuant to IDOC and/or Menard policy. (Doc. 1, p. 10). As a result, Plaintiff's "regular" mail is or has been delivered

---

[4] Plaintiff has attached a number of letters as exhibits to his complaint. Several of the letters reference inadequate medical care and/or concerns about physical therapy. (*See* Doc. 1-1, p. 9, 12/26/16 letter to Trost regarding need for physical therapy and inability to perform prescribed exercise in his cell; Doc. 1-1, p. 11, 12/28/16 sick call request regarding severe pain and inquiring about physical therapy; Doc. 1-1, p. 13, 1/2/17 letter directed to Trost complaining about lack of physical therapy; Doc. 1-2, pp. 8-9, 1/6/17 grievance complaining about lack of available physical therapy; Doc. 1-2, pp. 13-17, letters to Lashbrook dated January and February 2017 complaining about cell conditions and physical therapy; Doc. 1-2, pp. 19, 25-27, letters to Baldwin regarding physical therapy and cell conditions; Doc. 1-2, p. 20, 1/6/17 letter to Rauner regarding physical therapy and cell conditions; Doc. 1-2, p. 21, letter to healthcare administrator physical therapy; Doc. 1-2, p. 24, letter to Shicker regarding physical therapy)

about three weeks late (sometimes later). *Id.* Additionally, the deliberate understaffing has resulted in Plaintiff's legal mail being opened outside of his presence. *Id.*

### 4. Rehabilitation and Education (Count 7)

Menard does not have rehabilitation programs or opportunities for advanced education. (Doc. 1, p. 11). To the extent that such programs are available, the wait list is a year or longer. *Id.* Plaintiff attributes this inadequacy to state budgetary constraints. *Id.*

### 5. Segregation Inmates Housed with General Population Inmates (Count 8)

The segregation unit that is designed to house inmates being disciplined is occupied by general population inmates and segregation inmates. (Doc. 1, pp. 8-9). Plaintiff was "subjected to this breakdown in classification process on occasion." (Doc. 1, p. 9).

### 6. Law Library Access (Count 9)

Menard has reduced the number of inmates allowed to use the law library at one time. (Doc. 1, p. 11). Each cell house is permitted to send 30 or less inmates once a week to the law library (prior to the reduction, each cell house could send 30 or more inmates up to three times per week). *Id.*

The reduction was retaliation for an incident involving an inmate and an officer. *Id.* Menard has also imposed restrictions on which inmates can access the law library. *Id.* To access the law library, an inmate must demonstrate he is (1) proceeding *pro se* and (2) has a deadline in pending litigation. (Doc. 1, pp. 11-12). Generally, inmates are forced to show confidential legal communications to law library staff to establish a deadline exists. (Doc. 1, p. 12). Plaintiff, however, does not allege that *he* has been forced to allow law library staff to review legal communications. Additionally, the law library continues to employ a "runner system" for

retrieving legal materials. *Id.* The system is ineffective and has been found to be unconstitutional. *Id.*

**Discussion**

*Dismissal of Illinois Department of Corrections*

No matter what relief Plaintiff seeks against IDOC, his claims against it are barred because IDOC, as a state agency, is not a "person" that may be sued under § 1983. *Thomas v. Illinois*, 697 F.3d 612, 613 (7th Cir. 2012) ("[A] state and its agencies are not suable 'persons' within the meaning of section 1983...." (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 70–71 (1989))); see 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."). While immunity under the Eleventh Amendment does not bar suits for declaratory and injunctive relief against state employees sued in their official capacities, *see Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907–08 (7th Cir. 1991), this does not save Plaintiff's claim against IDOC, a state agency, even though he seeks injunctive relief. Separate from IDOC's immunity under the Eleventh Amendment, it also does not constitute a "person" that may be sued under § 1983. *See Thomas*, 697 F.3d at 613 (distinguishing a state agency's statutory defense that it is not a "person" under § 1983 from a state agency's constitutional defense of Eleventh Amendment sovereign immunity, and admonishing that courts should decide matters on statutory grounds before reaching constitutional grounds). IDOC will therefore be dismissed from this action with prejudice.

***Enumerated Counts***

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court has organized the claims in Plaintiff's *pro se* First Amended Complaint into the following enumerated counts:

**Count 1** - Eighth Amendment claim against Rauner, Baldwin, and Lashbrook for subjecting Plaintiff to unconstitutional conditions of confinement at Menard.

**Count 2** - Eighth Amendment claim against Wexford, Rauner, Baldwin, Lashbrook, Trost, Shicker, and Jane Doe (HCU Administrator) for exhibiting deliberate indifference to Plaintiff's serious medical condition by causing or contributing to Plaintiff's delayed receipt of physical therapy as prescribed by the outside specialist.

**Count 3** - Eighth Amendment claim against Trost and John Doe (physical therapist) for exhibiting deliberate indifference to Plaintiff's serious medical condition by failing to ensure that Plaintiff was able to perform daily therapeutic exercises as prescribed by the outside specialist.

**Count 4** - Eighth Amendment claim against John Doe (physical therapist) for exhibiting deliberate indifference to Plaintiff's serious medical condition for persisting in a course of treatment known to be ineffective.

**Count 5** - First Amendment claim for delays in delivering Plaintiff's non-legal mail.

**Count 6** - First and/or Fourteenth for claim for opening Plaintiff's legal mail outside his presence.

**Count 7** - Constitutional claim for failing to provide sufficient rehabilitation programs or opportunities for advanced education.

**Count 8** - Constitutional claim for housing segregation inmates with general population inmates.

**Count 9** - First and/or Fourteenth Amendment claim for failing to remedy deficiencies in the law library.

The parties and the Court will continue using these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these claims does not constitute an opinion regarding their merits.

*Claims Subject to Further Review*

## Count 1

The Eighth Amendment to the United States Constitution prohibits cruel and unusual punishment and applies to the states through the Due Process Clause of the Fourteenth Amendment. *Gillis v. Litscher*, 468 F.3d 488, 491 (7th Cir. 2006) (citing *Robinson v. California*, 370 U.S. 600 (1962)). Although the Constitution "does not mandate comfortable prisons," it does require inmates to be housed under "humane conditions" and provided with "adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994); *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). A claim for unconstitutional conditions of confinement includes an objective and a subjective component. *Farmer*, 511 U.S. at 834. Plaintiff must demonstrate (1) that he suffered a sufficiently serious deprivation (*i.e.*, objective standard) and (2) the defendant acted with deliberate indifference to his conditions of confinement (*i.e.*, subjective standard). *Sain v. Wood*, 512 F.3d 886, 893-94 (7th Cir. 2008) (citing *Farmer*, 511 U.S. at 837).

The allegations satisfy the objective component of this claim for screening purposes. Plaintiff describes being housed with a cellmate in a cell designed for a single person. Movement in the cell is restricted because of its small size. The cell is so small, Plaintiff is unable to exercise and is unable to perform a physician's recommended therapeutic exercises. Exercise opportunities outside of the cell are also limited. Plaintiff contends he is exposed to extreme temperatures, unsanitary plumbing conditions, mold, and rodent and insect infestations. At times,

Plaintiff has gone without clean drinking water and/or water to wash with. Plaintiff also alleges issues with accessing adequate cleaning supplies and basic hygiene items. As a result of these conditions, Plaintiff has allegedly suffered from physical health issues.

The next question is whether the high-ranking officials named in connection with this claim exhibited deliberate indifference to these conditions. Plaintiff submitted two grievances discussing some of these issues, though it is unclear who may have received it. (Doc. 1-2, pp. 2-3, 6-7). The Complaint and attached exhibits also suggest that Plaintiff submitted letters to Lashbrook, Baldwin, and Rauner regarding some of these conditions. (Doc. 1, pp. 2-3; Doc. 1-2, pp. 13-20, 25-27). He also alleges that Lashbrook, Baldwin, and Rauner must have known about the conditions because of the numerous grievances and lawsuits that have been filed over the years to challenge the same conditions. Plaintiff also claims that the John Howard Association Monitor Reports 2013-2015 have acted to notify Defendants of the conditions.

The Seventh Circuit has found that prison administrators in a similar situation were "well aware of multiple grievances from inmates regarding small cells" based on "numerous past lawsuits, including one specifically describing and ordering a remedial plan for overcrowding, small cells, and lack of adequate medical care. . . ." *Turley v. Rednour*, 729 F.3d 645, 652-53 (7th Cir. 2013) (citing *Lightfoot v. Walker*, 486 F. Supp. 504, 511 (C.D. Ill. 1980); *Munson v. Hulick*, 2010 WL 2698279 (S.D. Ill. July 7, 2010) (grievances filed by plaintiff and other inmates were deemed sufficient at screening to put prison officials on notice of unconstitutional conditions where Menard prisoner challenged 40' cells that held two inmates for 21-22 hours per day)). In addition to these past grievances and suits, Plaintiff did complain about the conditions in at least two grievances and may have written letters regarding the same. Given these considerations, the Court finds that the Complaint satisfies the subjective component of this

claim against Lashbrook and Baldwin, two high-ranking administrative officials who were allegedly involved in the decision making process regarding the complained of conditions at Menard.

Count 1 shall receive further review against Lashbrook and Baldwin. However, this claim shall be dismissed without prejudice against Rauner, whose involvement in prison housing decisions is not established by the allegations and who would have no involvement in carrying out any injunctive relief that is ultimately ordered.

## Count 2

Prison officials and medical personnel violate the Eighth Amendment when they act with deliberate indifference to an inmate's serious medical needs. *Rasho v. Elyea*, -- F.3d --, 2017 WL 892500 (7th Cir. March 7, 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chatham v. Davis*, 839 F.3d 679, 684 (7th Cir. 2016)). To state a claim in this context, a plaintiff must allege that he suffered from a serious medical condition (*i.e.*, objective standard) and the prison official responded with deliberate indifference (*i.e.*, subjective standard). *Petties v. Carter*, 836 F.3d 722, 727-28 (7th Cir. 2016) (citing *Farmer*, 511 U.S. at 834; *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)). At this early stage, Plaintiff has alleged a sufficiently serious medical condition with respect to his knee/hip injuries and the pain associated therewith.[5] The remaining question is whether the specified Defendants exhibited deliberate indifference to this condition.

As a preliminary matter, the Court notes this claim is premised on the delayed receipt of physical therapy for Plaintiff's knee/hip injury and associated pain. Plaintiff's treatment was

---

[5] The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction of pain;" (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment;" (3) "presence of a medical condition that significantly affects an individual's daily activities;" or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

delayed for at least one and at most three months. Plaintiff claims that he was in extreme pain while waiting for physical therapy and that the delay in treatment worsened his injury. At this point in the litigation, the Court assumes without deciding that the alleged delay is a sufficient basis for Plaintiff's deliberate indifference claim. However, further development of the record may prove otherwise.

The allegations arguably support a claim of deliberate indifference against Trost, Shicker, and Jane Doe (HCU administrator), based on Plaintiff's claims that these individuals were aware of Plaintiff's predicament but failed to intervene to remedy the situation. *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015). Trost may also be subject to liability for his alleged role in understaffing the HCU.

As to Wexford, the Seventh Circuit has held the *Monell* theory of municipal liability is applicable. *Whiting v. Wexford Health Sources, Inc.*, 839 F.3d 658, 664 (7th Cir. 2016) (citing *Shields v. Ill. Dept. of Corr.*, 746 F.3d 782 (7th Cir. 2014) (noting every circuit court that has addressed the issue has extended the *Monell* standard to private corporations acting under color of state law). In order to prevail on this claim against Wexford, Plaintiff must establish that its policies, customs, or practices caused a constitutional violation. *Whiting*, 839 F.3d at 664 (citing *Thomas v. Cook Cty. Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2009)). Plaintiff alleges that Wexford instituted policies, customs, or practices that resulted in his delayed treatment, including its decision to understaff Menard's HCU. This is sufficient at this stage of the litigation.

The Court will allow Plaintiff to proceed with Count 2 against Baldwin and Lashbrook for the same reasons the Court allowed Count 1 to proceed against these Defendants. Likewise,

Count 2 shall be dismissed without prejudice against Rauner for the same reasons the Court dismissed Count 1 against this Defendant.

In summary, Count 2 shall receive further review against Wexford, Trost, Shicker, Jane Doe (HCU administrator), Baldwin, and Lashbrook. However, this claim shall be dismissed without prejudice against Rauner.

## Count 3

Count 3 is also an Eighth Amendment claim for exhibiting deliberate indifference to Plaintiff's serious medical condition (knee/hip injuries and associated pain). Plaintiff claims that an outside specialist recommended daily therapeutic exercises. Because Plaintiff's cell was so small, Plaintiff could not comply with the treatment plan. Plaintiff complained to Trost and to John Doe (physical therapist) regarding this issue, to no avail.

At this stage of the litigation, the Court cannot say with certainty that the specified Defendants' failure to address Plaintiff's complaints did not amount to deliberate indifference. *See Dahm v. Feinerman,* 297 F. App'x 542, *2 (7th Cir. 2008) ("An inference of deliberate indifference may arise where prison officials refuse to follow an outside specialist's orders or recommendations."); *Gil v. Reed*, 381 F.3d 649, 663-64 (7th Cir. 2004) (same). Accordingly, Count 3 shall receive further review as to Trost and John Doe (physical therapist).

## Count 4

Plaintiff claims that John Doe (physical therapist) provided ineffective physical therapy. Specifically, John Doe provided therapy that focused on Plaintiff's outer hip as opposed to Plaintiff's inner hip (the location of his injury). Plaintiff claims he complained, but John Doe did not alter his treatment plan. It is unclear whether John Doe's chosen course of treatment was consistent with the treatment recommended by the outside specialist.

A doctor who chooses one routine medical procedure over another does not violate the Eighth Amendment. *McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir.2010). Moreover, "dissatisfaction or disagreement with a doctor's course of treatment is generally insufficient" to sustain a claim of deliberate indifference. *Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir.2006); *see Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008). However, persisting in a course of treatment known to be ineffective states a claim under the Eighth Amendment. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (finding deliberate indifference where medical defendants persisted in a course of conservative treatment for eighteen months despite no improvement). Additionally, as previously noted, failure to follow an outside specialist's recommendations supports an inference of deliberate indifference.

Considering the above, Count 4 shall receive further review as to John Doe.

***Claims Subject to Dismissal***

With the exception of IDOC, an entity that has been dismissed from this action with prejudice, Counts 5 through 9 are not clearly associated with any specific Defendant. This is sufficient grounds for dismissing these counts for failure to state a claim. Further, even to the extent that Plaintiff intended to associate these claims with Baldwin or Lashbrook (based on their involvement in issuing policies or failing to remedy known constitutional violations) the claims are insufficient for the reasons described below.

**Count 5**

Because of chronic understaffing, Plaintiff's non-legal mail is often delivered approximately three weeks late (sometimes later). The Supreme Court has recognized that prisoners have protected First Amendment interests in both sending and receiving mail. *See*

*Thornburgh v. Abbott*, 490 U.S. 401 (1989); *Turner v. Safely*, 482 U.S. 78 (1987); *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

Here, as presently alleged, Plaintiff's claim is not sufficiently serious to raise constitutional concerns. First, Plaintiff does not allege that the delay is attributable to a content-based policy. Second, it is unclear how often delivery of Plaintiff's mail is delayed. Third, the alleged three-week delay does not necessarily suggest a constitutional violation. *See, Sizemore v. Williford,* 829 F.2d 608, 610 (7th Cir. 1987) ("merely alleging an isolated delay or some other relatively short-term, non content-based disruption in the delivery of inmate reading materials will not support, even as against a motion to dismiss, a cause of action grounded upon the First Amendment.").  *See also e.g.,Schroeder v. Drankiewicz,* 519 F. App'x 947, (7th Cir. Mar. 26, 2013) (concluding that two-month delay in sending prisoner's letter did not violate First Amendment)*;*; *Rowe v. Shake*, 196 F.3d 778, 782 (7th Cir.1999) (concluding that allegations of "relatively short-term[6] and sporadic" delays in delivering mail failed to state First Amendment claim); *Ahlers v. Rabinowitz*, 684 F.3d 53, 64–65 (2d Cir.2012) (concluding that eleven instances of delayed or withheld mail over four months did not state First Amendment claim).

For these reasons, Count 5 shall be dismissed without prejudice.

### Count 6

The Complaint does not support a constitutional claim pertaining to the opening of Plaintiff's legal mail. "[W]hen a prison receives a letter for an inmate that is marked with an attorney's name and a warning that the letter is legal mail, officials *potentially* violate the inmate's rights if they open the letter outside of the inmate's presence." *Kaufman v. McCaughtry*, 419 F.3d 678, 686 (7th Cir. 2005) citing *Wolf v. McDonnell*, 418 U.S. 539, 577 (1974) (emphasis

---

[6] The "relatively short-term" delays at issue in *Rowe* varied from as few as two days to as many as 26 days. *Rowe,* 196 F.3d 778, 780 (7th Cir. 1999). In the instant case, the alleged delay is approximately 21 days.

added). Isolated incidents of interference with legal mail are generally insufficient to maintain a claim. *See Bruscino v. Carlson*, 654 F.Supp. 609, 618 (S.D. Ill. 1987), aff'd, 854 F.2d 162 (7th Cir. 1988). However, a prisoner's claim of ongoing interference with his legal mail is generally sufficient to state a claim. *Castillo v. Cook Cnty. Mail Room Dep't*, 990 F.2d 304 (7th Cir. 1993). Further, the Seventh Circuit has suggested that such a claim is only viable where a hindrance is alleged. *See Guajardo–Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010) ("whether the unjustified opening of [attorney mail] is a violation of the right of access to the courts or merely, as intimated in *Kaufman* and held in *Gardner*, a potential violation .... we think [as with claims challenging the adequacy of a prison's library or legal assistance program] there must b[e] a showing of a hindrance").

Here, Plaintiff contends that because of understaffing, his legal mail has been opened outside of his presence. This single vague assertion is insufficient. Accordingly, Count 6 shall be dismissed without prejudice for failure to state a claim.

### Count 7

It is well settled that there is no property or liberty interest in attending educational, vocational, or rehabilitative courses while in prison and institutions are not constitutionally required to provide these programs to inmates. *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000) (prisoner had no Fourteenth Amendment due process claim for being transferred to a prison where he could no longer enroll in programs that might earn him earlier release); *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996); *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982), cert. denied 459 U.S. 1150 (1983) ("There is no constitutional mandate to provide educational, rehabilitative, or vocational programs, in the absence of conditions that give rise to a violation of the Eighth Amendment."). Consequently, Plaintiff has not stated a viable claim

pertaining to inadequate and/or unavailable educational or rehabilitative courses at Menard. Therefore, Count 7 shall be dismissed without prejudice.

## Count 8

Plaintiff objects to the practice of housing general population inmates with inmates assigned to disciplinary segregation. The Court is unaware of any authority suggesting that such a policy, standing alone, gives rise to a constitutional claim. Accordingly, Count 8 shall be dismissed without prejudice.

## Count 9

Plaintiff identifies several deficiencies in the law library at Menard, including an ineffective "runner program" and policies that limit access to the library. Plaintiff, however, does not identify any detriment that can be attributed to the alleged inadequacies. This is insufficient. *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) ("mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoner's rights; his right is to access the courts, and only if the defendants' conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed"); *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions") (internal quotation and citation omitted). Accordingly, Count 9 shall be dismissed without prejudice.[7]

## **Identification of Unknown Parties**

Plaintiff will be allowed to proceed against the Unknown Defendants, who are identified in the Complaint as (1) John Doe (physical therapist) and Jane Doe (HCU administrator). These

_____

[7] The Court notes Plaintiff has also alleged that prisoners at Menard sometimes have to show law library staff confidential legal communications to gain access to the library. Plaintiff, however, does not allege that *he* has ever been subjected to this requirement. Accordingly, this claim is not addressed.

individuals must be identified with particularity before service of the Complaint can be made on them. Also, where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009).

For that reason, Plaintiff shall be allowed to proceed against Menard's current warden, Jacqueline Lashbrook, (who is already an individual capacity defendant in the instant case), in her official capacity, for the purpose of responding to discovery (informal or formal) aimed at identifying these Unknown Defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of the Unknown Defendants are discovered, Plaintiff must file a motion to substitute each newly identified defendant in place of the generic designation in the case caption and throughout the Complaint.

## Injunctive Relief

Plaintiff's Complaint includes a request for injunctive relief, which the Court construes as a request for injunctive relief at the close of the case. Menard's current warden, Jacqueline Lashbrook, in her official capacity can carry out any injunctive relief that is ultimately ordered. *See, e.g., Gonzalez v. Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011) (warden of state prison appropriate defendant in action seeking injunctive relief because the warden is responsible for ensuring the any injunctive relief ordered by the court is carried out).

## Remaining Official Capacity Claims

Plaintiff has stated that he is suing all of the Defendants in their official and individual capacities. But individuals are not "persons" in their official capacities under § 1983 for the

purposes of this suit. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). *See also Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001). Therefore, with the exception of Lashbrook who shall remain as an official capacity defendant for purposes of identifying the Unknown Defendants and carrying out any injunctive relief that might be granted, Plaintiff's official capacity claims against any Defendant who remains in this action are dismissed without prejudice.

## Severance

In *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007), the Seventh Circuit explained that a prisoner may not "dodge" the fee payment or three strikes provisions in the Prison Litigation Reform Act by filing unrelated claims against different defendants in one lawsuit. Rather, district courts must sever unrelated claims against different defendants or sets of defendants and require that the claims be brought in separate lawsuits. *Id.* In reaching this decision, the Appellate Court reminded district courts that FED. R. CIV. P. 20 (governing joinder of *parties*) and FED. R. CIV. P. 18 (governing joinder of *claims*) apply as much to prisoner cases as they do to any other case. Thus, when a prisoner files a multi-claim, multi-defendant suit, courts must consider whether the parties and claims are properly joined under these rules.

In the instant case, with respect to Counts 1 through 4, joinder of the parties and claims appears to be appropriate under Rules 20 and 18. However, if the Court subsequently determines that a claim has been misjoined, such claim may be severed at any time. FED. R. CIV. P. 21. Moreover, the Court has "broad power under Rule 21 to sever *even properly-joined claims* and [has] equally broad power under Rule 42(b) to keep the claims together for pretrial but then separate them for trial." Committee Comments, Rule 18 (emphasis added). Thus, as the case progresses, the Court remains open to reconsidering the issue *sua sponte* or on motion.

<u>**Pending Motions**</u>

Plaintiff's Motion to Appoint Counsel (Doc. 3) shall be **REFERRED** to United States Magistrate Judge Stephen C. Williams for a decision.

<u>**Disposition**</u>

**IT IS ORDERED** that **ILLINOIS DEPARTMENT OF CORRECTIONS** is **DISMISSED** with prejudice and **RAUNER** is **DISMISSED** without prejudice for the reasons articulated herein. The Clerk of the Court is **DIRECTED** to terminate these Defendants as parties in CM/ECF.

**IT IS FURTHER ORDERED** that **COUNT 1** shall receive further review against **BALDWIN** and **LASHBROOK**. This claim is **DISMISSED** without prejudice against **RAUNER** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 2** shall receive further review against **WEXFORD, BALDWIN, LASHBROOK, TROST, SHICKER,** and **JANE DOE.** This claim is **DISMISSED** without prejudice against **RAUNER** for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNT 3** shall receive further review against **TROST** and **JOHN DOE.**

**IT IS FURTHER ORDERED** that **COUNT 4** shall receive further review against **JOHN DOE.**

**IT IS FURTHER ORDERED** that **COUNTS 5, 6, 7, 8,** and **9** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that any claims set forth in the Complaint but not recognized herein are **DISMISSED** without prejudice for failure to state a claim upon which

relief may be granted.

With respect to **COUNTS 1, 2, 3,** and **4**, the Clerk of Court shall prepare for Defendants **BALDWIN, SHICKER, LASHBROOK, TROST, JOHN DOE, JANE DOE,** and **WEXFORD**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who cannot be found at the address provided by Plaintiff, the employer shall furnish the Clerk with that Defendant's current work address, or, if not known, the defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file, nor disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings, including a decision on the Motion to Appoint Counsel (Doc. 3). Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Williams** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28

U.S.C. § 636(c), *should all the parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of the fact that his application to proceed *in forma pauperis* was granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against Plaintiff and remit the balance to Plaintiff. Local Rule 3.1(c)(1).

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than seven days after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: September 25, 2017**

<u>**s/ MICHAEL J. REAGAN**</u>
**Chief Judge**
**United States District Court**