UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| KYRON MURDOCK, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 3:17-cv-0615-GCS |
| WEXFORD HEALTH SOURCES, INC., JOHN BALDWIN, LOUIS SHICKER, JACQUELINE LASHBROOK, JOHN TROST, DUANE HILL, and GAIL WALLS, | ) | |
| Defendants. | ) | |

## MEMORANDUM and ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Before the Court is Plaintiff Kyron Murdock's motion for preliminary injunction directed at Defendant Wexford Health Sources, Inc. (Doc. 93, 96). Murdock requests that Defendant Wexford Health Sources, Inc. ("Wexford") approve him for an outpatient visit to an orthopedist who specializes in hip injuries to diagnose and to treat his severe hip and knee pain. Wexford opposes the motion (Doc. 95). The Court held a hearing on the motion on February 6, 2020, heard testimony from Murdock and took the matter under advisement (Doc. 122). For the reasons delineated below, the Court **DENIES** the motion.

In June 2017, Murdock, an inmate in the custody of the Illinois Department of Corrections, filed suit against several individuals who worked, in some capacity, at

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS

| KYRON MURDOCK, | ) |  |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 3:17-cv-0615-GCS |
| WEXFORD HEALTH SOURCES, INC., JOHN BALDWIN, LOUIS SHICKER, JACQUELINE LASHBROOK, JOHN TROST, DUANE HILL, and GAIL WALLS, | ) | |
| Defendants. | ) | |

## MEMORANDUM and ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Before the Court is Plaintiff Kyron Murdock's motion for preliminary injunction directed at Defendant Wexford Health Sources, Inc. (Doc. 93, 96). Murdock requests that Defendant Wexford Health Sources, Inc. ("Wexford") approve him for an outpatient visit to an orthopedist who specializes in hip injuries to diagnose and to treat his severe hip and knee pain. Wexford opposes the motion (Doc. 95). The Court held a hearing on the motion on February 6, 2020, heard testimony from Murdock and took the matter under advisement (Doc. 122). For the reasons delineated below, the Court **DENIES** the motion.

In June 2017, Murdock, an inmate in the custody of the Illinois Department of Corrections, filed suit against several individuals who worked, in some capacity, at

Menard Correctional Center ("Menard") alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983.[1] Murdock alleges that the Defendants were deliberately indifferent to his serious medical needs relating to the inadequacy of medical treatment for his severe hip and knee pain that he began experiencing in mid-to-late 2016.

After threshold review, the Court allowed Murdock to proceed on four counts: (1) that Defendants Lashbrook and Baldwin violated Murdock's Eighth Amendment rights by subjecting him to unconditional conditions of confinement; (2) that Defendants Wexford, Trost, Shicker, Walls, Baldwin, and Lashbrook violated Murdock's Eighth Amendment rights by acting with deliberate indifference to his serious medical condition by causing or contributing to his delayed receipt of physical therapy as prescribed by an outside specialist; (3) that Defendants Trost and Hill violated Murdock's Eighth Amendment rights by failing to ensure he was able to perform daily therapeutic exercises as prescribed by the outside specialist; and (4) that Defendant Hill violated Murdock's Eighth Amendment rights by persisting in a course of treatment known to be ineffective in violation of his Eighth Amendment rights. (Doc. 6, p. 11-16).

Also, the Court construed Murdock's request for injunctive relief in his complaint as one for injunctive relief at the close of the case. The Court noted that Lashbrook, as Warden of Menard, could carry out any injunctive relief that is ultimately ordered in her official capacity. *Id.* at p. 20.[2]

---

[1] The record reflects that Murdock was transferred to Lawrence Correctional Center ("Lawrence") in April 2019.

[2] Because Murdock is currently housed at Lawrence, the proper defendant for any injunctive relief is Deanna Brookhart, in her official capacity as the Acting Warden of Lawrence. *See, e.g., Gonzalez v.*

## FACTS

During the February 6, 2020 hearing, Murdock testified that he has constant severe hip and knee pain which limits his daily activities and that Wexford is not providing him proper medical care despite his repeated requests. On a scale of 1 to 10 (with 10 being the highest level of pain), his hip and knee pain ranges from an 8 to 10 daily. On the day of the hearing, Murdock stated that his hip pain was at an 8 and that his knee pain was at a 7. He testified that he complained to staff and medical personal about his injuries before he filed the lawsuit, and that he has been through many sick calls, seen different nurses and doctors, to no avail.

In late 2016, Murdock was sent to see Dr. Caro, a licensed physical therapist, for his hip pain. Dr. Caro prescribed Murdock physical therapy ("PT"), showed Murdock exercises to perform and provided Murdock with an exercise sheet. Murdock testified that while he was housed at Menard he saw Defendant Duane Hill, a physical therapist, and that the PT did not help either his hip or knee pain.

Next, Murdock testified that he was sent to see Dr. Morgan, an outside general orthopedist, who ordered an MRI and discussed the results of the MRI with him in August 2017. Dr. Morgan assessed Murdock as having a labral tear of the right hip joint. Dr. Morgan discussed the possibility of hip replacement surgery but advised against it

---

*Feinerman*, 663 F.3d 311, 315 (7th Cir. 2011)(noting that warden of state prison is appropriate defendant in action seeking injunctive relief because the warden is responsible for ensuring that any injunctive relief ordered by the court is carried out). Thus, pursuant to Federal Rule of Civil Procedure 25(d), the Court **substitutes** Brookhart, in her official capacity as the Acting Warden of Lawrence, for Lashbrook, in her official capacity only, on Murdock's request for injunctive relief, if any is ultimately ordered. Lashbrook remains a named Defendant in her individual capacity on the claims against her in Counts 1 and 2.

because of Murdock's younger age (32). Dr. Morgan told Murdock to follow up as needed. Murdock testified that he has repeatedly asked medical staff and personnel to see Dr. Morgan for a follow up or to see another specialist. Wexford, however, refuses to send him for a follow up visit.

**LEGAL STANDARDS**

Injunctions are extraordinary equitable remedies that are to be granted in civil cases only when specific criteria are clearly met by the movant. *See Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). The plaintiff must show four elements for an injunction: (1) plaintiff is likely to succeed on the merits; (2) without an injunction irreparable harm against the plaintiff is likely; (3) the harm likely to be suffered by the plaintiff would be greater than the harm the injunction would inflict on defendants; and (4) the injunction is in the public interest. *Id.* The greater the likelihood that the plaintiff will succeed on the merits of the case, the less significant the likely harm against the plaintiff must be in relation to the harm the defendant will likely suffer due to an injunction. *Id*. Courts may issue preliminary injunctions only on notice to the adverse party. *See* FED. R. CIV. PROC. 65(a)(1).

In the context of prisoner litigation, there are further restrictions on the remedial power of the courts. The scope of a court's authority to enter an injunction against a correctional facility is circumscribed by the Prisoner Litigation Reform Act ("PLRA"). *See Westefer v. Neal*, 682 F.3d 679, 683 (7th Cir. 2012). Under the PLRA, preliminary injunctive relief "must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to

correct that harm." 18 U.S.C. §3626(a)(2). *See also Westefer*, 682 F.3d at 683 (noting that the PLRA "enforces a point repeatedly made by the Supreme Court in cases challenging prison conditions: prison officials have broad administrative and discretionary authority over the institutions they manage") (internal quotation marks and citation omitted).

The Seventh Circuit has described injunctions like the one sought here, where an injunction would require an affirmative act by a defendant, as a mandatory preliminary injunction. *See Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997). Mandatory injunctions are "cautiously viewed and sparingly issued," because they require the court to command a defendant to take a particular action. *Id*. (citing *Jordan v. Wolke*, 593 F.2d 772, 774 (7th Cir. 1978)). *See also W.A. Mack, Inc. v. Gen. Motors Corp.*, 260 F.2d 886, 890 (7th Cir. 1958)(stating that "[a] preliminary injunction does not issue which gives to a plaintiff the actual advantage which would be obtained in a final decree.").

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success – in other words, a greater than negligible chance of winning." *Am General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Further, "[t]he absence of an adequate remedy at law is a precondition to any form of equitable relief." *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984). The requirement of irreparable harm eliminates those cases where, although the ultimate relief sought is equitable, the plaintiff can wait to the end of trial to get that relief. *Id*. Only if the plaintiff will suffer irreparable harm in the interim – that is, before a final judgment -can he obtain a preliminary injunction. *Id*. Plaintiff must demonstrate more than a "mere possibility of harm." *Whitaker by Whitaker v. Kenosha Unified School Dist. No. 1 Bd. of Education*, 858 F.3d

1034, 1045 (7th Cir. 2017)(citing *Michigan v. U.S. Army Corps of Eng'rs*, 667 F.3d 765, 787 (7th Cir. 2011). The harm need not "actually occur before injunctive relief is warranted," nor must it be "certain to occur before" the Court reaches a decision on the merits. *Id.* "Rather, harm is considered irreparable if it 'cannot be prevented or fully rectified by the final judgment after trial.'" *Id.* (citing references omitted).

## ANALYSIS

Here, the undersigned finds that a preliminary injunction is not warranted. Specifically, the Court finds that Murdock failed to demonstrate that he will suffer irreparable harm absent injunctive relief. Murdock seeks treatment from an outside specialist, either an orthopedist hip specialist or a return visit to orthopedist Dr. Morgan, for his hip and knee ailments. Murdock contends that without this outside medical examination, he will continue to suffer irreparable harm due to the continued pain that he suffers in his hip and knee and that his condition may further deteriorate.

The undersigned notes that Murdock's symptoms have persisted for over three years (close to four), and he has not presented evidence that his symptoms have escalated or that his health has deteriorated. For example, Murdock applied for a job in the kitchen which requires a lot of standing. He also applied for a job as a porter, which Murdock described as a job that requires a fair amount of walking. Moreover, Murdock testified that he is still able to attend yard and gym, lift weights with his upper body, that he can shoot the basketball (though he is not able to play a full game of basketball), and that he is able to walk without the assistance of a cane, walker or crutch. Murdock further stated that he can go to dietary, the law library, the commissary and that he is able to shower.

Murdock also indicated that although he could not do PT while he was in Menard, he could now do PT and stretch in his cell at Lawrence. While Murdock testified that he experiences daily pain in his hip and knee that ranges from 8 to 10 (on a scale of 1 to 10 with 10 being the highest pain level), the Court did not observe Murdock wincing in pain as one would expect with reported pain in that range level. It is evident that Murdock's pain has not affected his ability to undertake basic, daily activities.[3]

The Court additionally notes that discovery in this case is closed. The dispositive motions in this case have been filed and will be ripe on March 19, 2020.[4] A trial date will be set soon after the Court renders a decision on the summary judgment motions, if necessary. Thus, the duration to the conclusion of this case is relatively short and Murdock has not shown that this period of time will cause irreparable harm.

Further, the relief sought, an examination by an outside hip orthopedist, is the type of relief Murdock could seek at the conclusion of his case. Such injunctive relief is not warranted when the order would give "to a plaintiff the actual advantage which would be obtained in the final decree." *W.A. Mack, Inc.*, 260 F.2d at 890. Moreover, inmates do

---

[3] Murdock relies on *Akers v. Wexford Health Sources, Inc.*, 14-cv-0997-JPG-DGW, for the proposition that the harm of daily pain is enough to establish irreparable harm. The Court, however, finds that the facts of *Akers* are readily distinguishable from the facts of this case. In *Akers*, for example, Plaintiff suffered from "an inguinal hernia that has increased in size and is causing him constant, intense pain that affects all facets of his daily activity. In particular, Plaintiff has difficulty sleeping, digesting food and walking. Plaintiff must also hold his hernia in order to cough, sneeze, blow his nose or have a bowel movement." *Akers*, 14-0997-JPG-DGW (Doc. 66, p. 9). Thus, in *Akers*, it was readily apparent that the intense pain was having a significant adverse effect on Plaintiff's daily activities. Here, on the other hand, the evidence presented does not indicate that Murdock's daily activities were severely impacted.

[4] On February 13, 2020, the Court extended Murdock's response deadline (Doc. 125).

not have the right to demand specific medical care. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006).

Taken together, the evidence before the Court shows that the risk of irreparable harm to Murdock during the pendency of this action is low. Similarly, there is insufficient support in the record before the Court to show that Murdock lacks an adequate remedy at law and that traditional legal remedies are inadequate to address his concerns and alleged injuries. *See Roland Mach Co.*, 749 F.2d at 386; *Girl Scouts of Manitou Council Inc. v. Girl Scouts of U.S. of America, Inc.*, 549 F.3d 1079, 1095 (7th Cir. 2008). Given the unlikelihood of irreparable harm to him absent preliminary relief, and the availability of adequate remedies at law, Murdock fails to satisfy the threshold requirements for receiving injunctive relief, and no preliminary injunction shall issue. *See, e.g., Girl Scouts of Manitou Council*, 549 F.3d at 1086 (noting that courts only move on to the balancing phase if a moving party can satisfy the inquiries made in the threshold phase of evaluating a request for preliminary relief).

Finally, Murdock seeks a Court order for his condition to be reviewed *again* by an outside specialist. The Court is "reluctant to interfere with the internal administration of state prisons because [it is] less qualified to do so than prison authorities." *Thomas v. Ramos*, 130 F.3d 754, 764 (7th Cir. 1997)(citations omitted). This is especially true because Murdock has not made a showing that an examination by an outside specialist is necessary.

## CONCLUSION

For the above-stated reasons, the Court **DENIES** Plaintiff's motion for preliminary injunction (Doc. 93). Lastly, the Court **DIRECTS** the Clerk of the Court to add Deanna Brookhart, in her official capacity only as the Acting Warden of Lawrence, as a Defendant for carrying out any injunctive relief that may be ordered in this case as reflected in footnote 2.

**IT IS SO ORDERED.**

Dated: February 26, 2020.

Digitally signed by Magistrate Judge Gilbert C. Sison
Date: 2020.02.26 11:00:49 -06'00'

GILBERT C. SISON
United States Magistrate Judge